# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Catherine Brown, individually, and as next friend of the minors G.B. and T.B., | ) ) ) Case No.: 15 cv 4127 |
| Plaintiffs, | ) ) |
| v. | ) FIRST AMENDED ) COMPLAINT FOR VIOLATION OF ) CIVIL RIGHTS |
| Police Officers Michelle Morsi, Jose Lopez, Jason Vanna, J.R. Hickey, Star No. 11523, L.F. Hill, Star No. 16047, J.M. Daisy, Star No. 10982, Navia, Star No. 7390, McMahon Star No. 17102, Ho Star No. 7995, Chevelier Star No. 7206, John Blahusiak, Detective Michelle Moore-Grose, Detective William Sullivan, Detective Bryan Neely, Sgt. Durham Star No. 1803, Sgt. J. Brown Star No. 1133, Sgt. Greer, Star No. 1316, Sgt. R. Blas, Star No. 1248, and the City of Chicago, | ) ) ) **JUDGE BLAKEY** ) ) ) ) **JURY DEMANDED** ) ) ) ) |
| Defendants. | |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff Catherine Brown ("Brown") was and is a citizen of the United States, and was within the jurisdiction of this court.

4. Brown is the mother and a custodial parent of the minors G.B. and T.B.

5. At all times herein mentioned, Plaintiff G.B. was a minor born in 2004, was and is a citizen of the United States, and was within the jurisdiction of this court. Brown is acting as her next friend.

6. At all times herein mentioned, Plaintiff T.B. , a minor born in November 2011, was and is a citizen of the United States, and was within the jurisdiction of this court. Brown is acting as her next friend.

7. At all times herein mentioned, Defendant Chicago Police Officer Michelle Morsi, ("Morsi") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

8. At all times herein mentioned, Defendant Chicago Police Officer Jose Lopez ("Lopez") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

9. At all times herein mentioned, Defendant Chicago Police Officer Jason Vanna ("Vanna") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

10. At all times herein mentioned, Defendant Chicago Police Officer J.R. Hickey, Star No. 11523("Hickey") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

11. At all times herein mentioned, Defendant Chicago Police Officer L.F. Hill, Star No. 16047 ("Hill") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

12. At all times herein mentioned, Defendant Chicago Police Officer J.M. Daisy, Star No. 10982 ("Daisy") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

13. At all times herein mentioned, Defendant Chicago Police Officer Navia, Star No. 7390 ("Navia") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

14. At all times herein mentioned, Defendant Chicago Police Officer McMahon, Star No. 17102, ("McMahon") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

15. At all times herein mentioned, Defendant Chicago Police Officer Ho, Star No. 7995, ("Ho") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

16. At all times herein mentioned, Defendant Chicago Police Officer Chevelier, Star No. 7206, ("Chevelier") was employed by the Chicago Police Department, and was acting under

color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

17. At all times herein mentioned, Defendant Chicago Police Officer John Blahusiak, ("Blahusiak") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

18. At all times herein mentioned, Defendant Chicago Police Detective Michelle Moore-Grose ("Moore-Grose") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

19. At all times herein mentioned, Defendant Chicago Police Detective William Sullivan, ("Sullivan") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

20. At all times herein mentioned, Defendant Chicago Police Detective Bryan Neely ("Neely") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

21. At all times herein mentioned, Defendant Chicago Police Sergeant Durham Star No. 1803, ("Durham") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

4

22. At all times herein mentioned, Defendant Chicago Police Sergeant J. Brown, Star No. 1133, ("J. Brown") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

23. At all times herein mentioned, Defendant Chicago Police Sergeant Greer, Star No. 1316, ("Greer") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

24. At all times herein mentioned, Defendant Chicago Police Sergeant R. Blas, Star No. 1248, ("Blas") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

25. At all times herein mentioned, the City of Chicago was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the Chicago Police Department. At all relevant times the City of Chicago was the employer of all individual defendants.

**FACTUAL ALLEGATIONS**

26. On or about May 13, 2013, Plaintiffs were inside a vehicle legally travelling in an alley behind their residence located at 8320 S. Kerfoot, Chicago, Illinois in order to park her vehicle.

27. At that place and time Defendants Morsi and Lopez, were located in a police vehicle traveling in the same alley in the opposite direction of Plaintiffs. They encountered one another with their vehicles facing each other.

5

28. At the time Morsi and Lopez first encountered Plaintiffs' vehicle Morsi and Lopez were not responding to an emergency, had not activated their siren, and had not activated their emergency lights located on the roof of their vehicle.

29. Morsi and Lopez exited their squad car and approached Plaintiffs' vehicle on foot.

30. There was no legal cause for Morsi or Lopez to approach Plaintiffs' vehicle.

31. After approaching Plaintiffs' vehicle Morsi made verbal threats towards Plaintiffs and used profanity.

32. After encountering this threatening and unprofessional behavior Plaintiff Brown called 911 to request assistance from a police supervisor.

33. Lopez and Morsi subsequently drew their service weapons and pointed them in the direction of Plaintiffs.

34. There was no legal cause to Lopez or Morsi to point their weapons towards Plaintiffs.

35. Brown perceived this action to be a threat to the safety of her and G.B. and T.B. In defense of herself and her children, and in order to protect the Plaintiffs from the use of deadly force Plaintiff Brown backed her vehicle out of the alley to a location proximate to the front of her residence.

36. Plaintiff s' vehicle stopped at the location on Kerfoot near the front of her residence.

37. Morsi intentionally used a Chicago Police Department squad car to strike front of Plailntiffs' vehicle by causing the front of the squad car to strike the front of Plaintiffs' vehicle.

38. There was no legal cause for Morsi to intentionally use her vehicle to strike Plaintiffs' vehicle.

6

39. When the squad car operated by Morsi struck Plaintiffs' vehicle all three Plaintiffs were still inside their vehicle.

40. Morsi was aware that Plaintiffs' vehicle contained the minor plaintiffs G.B. and T.B before she used the squad car to strike Plaintiffs' vehicle.

41. The force of the collision caused by the squad car striking Plaintiffs' vehicle caused Plaintiffs' vehicle to be pushed against a parked vehicle on the driver's side of Plaintiff's vehicle. As a result of being pushed against this parked vehicle Plaintiff Brown was not able to fully open her driver's side door.

42. After intentionally causing the squad car to strike Plaintiffs' vehicle Morsi exited the squad car and approached Plaintiffs' vehicle on foot.

43. After approaching Plaintiffs' partially opened driver's side door Morsi withdrew her OC spray canister from her duty belt.

44. After withdrawing the OC spray canister Morsi used it to spray Plaintiff s.

45. There was no legal cause for Morsi to spray Plaintiffs with OC spray.

46. At the time Morsi sprayed Plaintiff Brown she also sprayed Plaintiffs G.B. and T.B who were still inside Plaintiffs' vehicle.

47. After spraying the Plaintiffs Morsi returned the OC spray canister to her duty belt, turned her back to Plaintiff s, and walked away from Plaintiffs.

48. Morsi returned few seconds later, positioned herself on top of the parked vehicle that was preventing Plaintiff's driver's side door from fully opening.

49. From her position on top of the parked vehicle Morsi withdrew her service weapon and pointed it in the direction of Plaintiffs.

50. At the time Morsi drew her weapon and pointed it at Plaintiffs several other police officers were surrounding Plaintiffs' vehicle.

51. Morsi was the only police officer that drew her service weapon and pointed it in the Plaintiffs' direction.

52. At the time Morsi drew her weapon Plaintiffs were not intentionally refusing to comply with any police orders.

53. There was no legal cause for Morsi to point her service weapon at Plaintiffs.

54. Brown was then physically grabbed, picked up, and thrown to the ground by multiple police officers. While on the ground Brown was kicked and struck by multiple police officers. Thereafter, Brown was placed under arrest.

55. After Brown's arrest she was charged with several criminal offenses.

56. Morsi signed a criminal complaint against Brown for the offense of attempted first degree murder.

57. Several Chicago Police Department employees including Defendants created police reports containing false allegations against Brown.

58. As a result of Defendants' false allegations contained in criminal complaints and police reports Brown was prosecuted for 8 separate criminal offenses including multiple counts of attempted murder. Defendants created these false criminal complaints and police reports with the knowledge that they would be used to support a criminal prosecution of Brown.

59. On October 15, 2015, Brown was found not guilty of two counts of attempted murder of Morsi.

60. On October 15, 2015, Brown was found not guilty of two counts of causing great bodily harm to Morsi.

8

61.     On October 22, 2015, Brown was found not guilty of resisting arrest.

62.     By reason of the above-described acts and omissions of Defendants, Plaintiffs sustained injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering all to their damage in an amount to be ascertained.

63.     The aforementioned acts of Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiffs' rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

64.     By reason of the above-described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute, prosecute and render legal assistance to them in the within action so that they might vindicate the loss and impairment of their rights.  By reason thereof, Plaintiffs request payment by Defendants, and each of them, of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
### Plaintiff Catherine Brown against Defendants Morsi, Lopez, Vanna, Hickey, Hill, Daisy, Navia, McMahon, Ho, Chevelier, Blausiak, Durham, J. Brown, Greer, and Blas for EXCESSIVE FORCE

65.     Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

66.     By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges and immunities secured to her by the Fourth and/or Fourteenth Amendments of the Constitution of the United States and laws enacted thereunder.

67.     The arbitrary use of force by Defendants against Plaintiff's person was in violation of Plaintiffs' Constitutional Rights and not authorized by law. These acts were in

9

violation of Plaintiff's Fourth and/or Fourteenth Amendment rights. Therefore, Defendants, and each of them, in their individual capacity, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
### Plaintiffs G.B. and T.B. against Defendant Morsi for
### EXCESSIVE FORCE

68. Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

69. By reason of Defendant's conduct, Plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and/or Fourteenth Amendments of the Constitution of the United States and laws enacted thereunder.

70. The arbitrary use of force by Defendant against Plaintiffs was in violation of Plaintiffs' Constitutional Rights and not authorized by law. This use of force included intentionally striking Plaintiffs' vehicle with a police squad car and spraying them with OC spray. These acts were in violation of Plaintiffs' Fourth and/or Fourteenth Amendment rights. Therefore, Defendant is liable to Plaintiffs pursuant to 42 U.S.C. § 1983

## COUNT III
### Plaintiffs Against Lopez For
### FAILURE TO INTERVENE

71. Plaintiffs hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place.

72. Lopez was standing immediately next to Morsi when she removed her OC spray from her duty belt.

73. Lopez was standing immediately next to Morsi when she began spraying Plaintiffs with OC Spray and remained in that position during the entire time that Morsi sprayed Plaintiffs with OC spray.

74. Lopez had an opportunity to stop Morsi from spraying Plaintiffs with OC spray and/or reduce the amount of OC spray deployed at Plalintiffs.

75. Lopez did not make any effort to stop Morsi from spraying Plaintiffs with OC spray.

76. Instead of intervening to stop or reduce the amount of OC spray deployed Lopez stood by and laughed while Morsi engaged in this conduct.

77. Lopez knew that there was no need for Morsi to spray any of the Plaintiffs with OC spray.

78. Lopez's failure to intervene and protect Plaintiffs from Morsi spraying them with OC spray was in violation of Plaintiffs' Fourth and/or Fourteenth Amendment rights. Therefore, Lopez is liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT IV
### Plaintiffs Against Morsi and Lopez For
### UNLAWFUL SEIZURE

79. Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

80. By reason of Defendant's conduct, Plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and/or Fourteenth Amendments of the Constitution of the United States and laws enacted thereunder.

81. The Defendants' initial detention/seizure of Plaintiffs was in violation of Plaintiffs' Constitutional Rights and not authorized by law. Defendants seized Plaintiffs when they would not allow Plaintiff's vehicle to move, requested Plaintiff Brown's driver's license, attempted to open the door to Plaintiffs' vehicle, and/or pointed their service weapons at plaintiffs. Defendants did not have legal cause to initiate this seizure of Plaintiffs. These acts

11

were in violation of Plaintiffs' Fourth and/or Fourteenth Amendment rights. Therefore, Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983

### COUNT V
**Plaintiff BROWN Against Morsi, Lopez, Vanna, Hickey, Hill, Daisy, Navia, McMahon, Ho, Chevelier, Blahusiak, Moore-Grose, Sullivan, Neely, Durham, J. Brown, Greer, Blas, and The City of Chicago For**
**MALICIOUS PROSECUTION**

82. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) hereat as though fully alleged at this place

83. Defendants, who were Police Officers, Detectives, and Sergeants employed by the City of Chicago, maliciously commenced and caused to be continued multiple criminal charges against Brown. These charges included attempted murder, causing great bodily harm and resisting arrest.

84. Defendants initiated, facilitated, and/or continued this malicious prosecution by giving false police reports, and/or preparing and/or signing a false criminal complaints for the purpose of causing the initiation or continuation of the criminal prosecution of Brown.

85. The criminal proceedings On October 15, 2015, terminated in Plaintiff's favor when she was found not guilty of two counts of attempted murder, and not guilty of two counts of causing great bodily harm to Morsi.

86. The criminal proceedings on On October 22, 2015, terminated in Brown's favor when she was found not guilty of resisting arrest.

87. As a result of being prosecuted for these crimes Brown was injured emotionally, financially, and otherwise.

12

88. The City of Chicago is liable to Plaintiff for the acts of Morsi, Lopez, Vanna, Hickey, Hill, Daisy, Navia, McMahon, Ho, Chevelier, Blahusiak, Moore-Grose, Sullivan, Neely, Durham, J. Brown, Greer, and Blas pursuant to the doctrine of *respondeat superior*.

89. Therefore, Morsi, Lopez, Vanna, Hickey, Hill, Daisy, Navia, McMahon, Ho, Chevelier, Blahusiak, Moore-Grose, Sullivan, Neely, Durham, J. Brown, Greer, Blas and the City of Chicago are liable under the supplemental state law claim of Malicious Prosecution.

## COUNT VI
### Plaintiffs G.B. and T.B. Against Morsi and The City of Chicago For
### WILLFUL AND WANTON CONDUCT

90. Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

91. Morsi exhibited reckless disregard for the safety of G.B. and T.B. This conduct included intentionally striking Plaintiffs' vehicle with a police squad car, and then spraying them with OC spray.

92. Morsi's conduct caused harm to plaintiffs including, but not limited to, emotional distress.

93. The City of Chicago is liable to Plaintiffs for the acts of Morsi pursuant to the doctrine of *respondeat superior*.

94. Therefore, Morsi and the City of Chicago are liable under the supplemental state law claim of willful and wanton conduct.

13

**COUNT VII**
**Plaintiffs Against The City of Chicago For**
**MONELL LIABILITY**

95.     Plaintiffs incorporate and reallege paragraphs one (1) through sixty-four (64) hereat as though fully set forth at this place.

96.     The misconduct of the Chicago Police Department Sergeants, Detectives, and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

97.     As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Police Review Authority nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated the civil rights of citizens.

98.     The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

99.      Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department.  For example, on December 8, 2015, Rahm Emanuel, Mayor of the City of Chicago, stated publically that Chicago Police officers maintain this code of silence.

100. On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

> Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?
>
> Answer: The short answer is, yes.

101. Several of the individual defendants have had multiple citizen complaints filed against them without the Chicago Police Department implementing any discipline against them.

102. Defendant Morsi has had 19 misconduct complaints filed against her without receiving any discipline and seven of those complaints also included complaints against defendant Lopez.

103. Defendant Lopez has had 21 misconduct complaints filed against him.

104. Defendant Hickey has had 23 misconduct complaints filed against him.

105. Defendant Brown has had 19 misconduct complaints filed against him.

106. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

107. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

108. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple

times within the seven year retention period, IPRA will not consider those allegations if they are deemed unsustained.

109. Plaintiff alleges that these customs, policies and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in <u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to Plaintiffs as set forth above.

## COUNT VIII
### INDEMNIFICATION PURSUANT TO 745 ILCS 10/9-102
### AGAINST DEFENDANT CITY OF CHICAGO

110. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 109 hereat as though fully set forth at this place.

111. The acts of the Defendants were committed in the scope of their employment with the Defendant City of Chicago.

112. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402, Defendant City of Chicago is liable for any judgments for compensatory damages in this case arising from the actions of the Defendant Police Officers.

WHEREFORE, the Plaintiffs, by and through their attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That the Defendants be required to pay Plaintiffs' general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiffs' special damages;

3. That the Defendants be required to pay Plaintiffs' attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

16

4. That the Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiffs' costs of the suit herein incurred; and

6. That Plaintiffs have such other and further relief as this Court may deem just and proper.

        BY: s/Garrett Browne

        ED FOX & ASSOCIATES
        Attorneys for Plaintiffs
        300 West Adams
        Suite 330
        Chicago, Illinois 60606
        (312) 345-8877
        gbrowne@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

        BY: s/Garrett Browne

        ED FOX & ASSOCIATES
        Attorneys for Plaintiffs
        300 West Adams
        Suite 330
        Chicago, Illinois 60606
        (312) 345-8877
        gbrowne@efox-law.com