IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Catherine Brown, individually, and as next friend of the minors G.B. and T.B., <br><br> Plaintiffs, <br><br> v. <br><br> Police Officers Michelle Morsi, Jose Lopez, Jason Vanna, J.R. Hickey, Star No. 11523, L.F. Hill, Star No. 16047, J.M. Daisy, Star No. 10982, Navia, Star No. 7390, McMahon Star No. 17102, Ho Star No. 7995, Chevelier Star No. 7206, John Blahusiak, Detective Michelle Moore-Grose, Detective William Sullivan, Detective Bryan Neely, Sgt. Durham Star No. 1803, Sgt. J. Brown Star No. 1133, Sgt. Greer, Star No. 1316, Sgt. R. Blas, Star No. 1248, and the City of Chicago, <br><br> Defendants. | Case No.: 15 cv 4127 <br><br> **JUDGE BLAKEY** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW come Plaintiffs, by and through one of their attorneys of record, Garrett Browne, and respectfully move this Court to enter an order of summary judgment in their favor. In support, Plaintiffs state as follows:

**I. INTRODUCTION**

Defendant Michelle Murphy, a Chicago Police Officer, intentionally crashed a squad car into a vehicle carrying the Plaintiffs – a mother and two young children. Counts I and II of the Amended Complaint allege claims of excessive force against multiple Defendants. There are myriad disputed facts regarding what occurred before and after the vehicular collision that preclude summary judgment on all of the remaining claims. However, Plaintiffs' Motion for

Partial Summary Judgment focuses only Defendant Murphy's use of excessive force against Plaintiffs by striking them with a vehicle.  A video recording from Murphy's squad car demonstrates that Murphy rammed her squad car into the front of Plaintiffs' vehicle and struck it with great force.  The same video demonstrates that Plaintiffs' vehicle was already stopped when Murphy committed this act. Furthermore, Morsi has admitted that she intentionally caused this collision. Accordingly, Plaintiffs demonstrate below that they are entitled to summary judgment on Counts I and II for use of excessive force as to Defendant Murphy's intentional use of a squad car to strike their vehicle.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Inc. Co. v. Flanders Elec. Motor Serv. Inc.,* 40 F.3d 146, 150 (7th Cir. 1994).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses."  *Celotex Corp.v. Catrett*, 477 U.S. 317, 323-324 (1986).  The process is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex,* 477 U.S. at 327.

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Woods v. City of Chicago*, 34 F.3d 979, 987-988 (7th Cir 2000); *See Also*, *Askew v. Bloemker*, 548 F.2d 673, 679 (7th Cir 1976); *Williams v. Vasquez*, 62 Fed.Appx. 686, 2003 WL 1796030 (7th Cir.  2003). When a video captures the events in question, and clearly contradicts the non-moving party's version of the events, "a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris, 550* U.S. 372, 380 (2007)[1].

### III. UNDISPUTED FACTS

On May 13, 2013, the three Plaintiffs were in an automobile traveling through an alley located at approximately 8320 S. Kerfoot in the City of Chicago. (¶ 6) [2] At that approximate location Plaintiffs' vehicle encountered a Chicago Police Department squad car containing Defendants Jose Lopez and Michelle Murphy ("Murphy") traveling through the alley in the opposite direction. (¶7) Lopez and Murphy were not responding to an emergency (¶8) Most of what occurred next is hotly disputed by the parties. They disagree about nearly everything that occurred during the next several minutes. Defendants Lopez and Murphy contend Murphy was "dragged" by Plaintiffs' vehicle, and Plaintiff deny this happened. However, it is undisputed that Plaintiffs' vehicle backed out of the alley and onto S. Kerfoot. (¶9) Plaintiffs' vehicle came to a stop next to, or made slight contact with, a car parked on S. Kerfoot. (¶10)

Despite the fact that Plaintiffs' vehicle was then stationary, Murphy admits that she decided to intentionally cause a collision between the Chicago Police Department squad car she was operating and Plaintiffs' vehicle. (¶11) Murphy then did intentionally cause the front of her Chicago Police Department squad car to collide with the front of Plaintiffs' vehicle. (¶12) Murphy testified that she intended to collide with Plaintiffs' vehicle so that Plaintiffs' car could not "flee the scene or strike anybody else." (¶14) She did not cause the collision in order to disable Plaintiffs' vehicle.

---

[1] In the event that the Court is unclear as to anything is contained in the video of the incident Plaintiffs submit it may be useful to have a brief hearing for the parties to clarify what is contained in the video.

[2] All citations to paragraphs refer to the numbered paragraphs of Plaintiff's Local Rule 56.1 Statement of Uncontested Material facts.

3

(¶14) Murphy admits that she could have prevented Plaintiffs' vehicle from fleeing the scene in the same manner by simply parking her squad car in front of Plaintiffs' vehicle. (¶15)

Before intentionally causing this collision, Murphy knew that the minor Plaintiffs, T.B. and G.B, were in the vehicle and she estimated their ages to be "an infant" and "less than ten years old." (¶¶13, 16) At the time of the collision the driver's side door of the Plaintiffs' vehicle was already open. (¶17) Murphy estimates that she was traveling less than 30 miles per hour when she caused this collision. (¶18) However, the force of the collision caused Plaintiffs' vehicle to be pushed into a parked vehicle. (¶19) A video recording of this incident taken from Murphy's squad car captured the collision between the squad car operated by Murphy and Plaintiffs' vehicle. (¶22) At approximately 9:39 minutes into the video recording the squad car operated by Murphy is seen traveling through the alley at a high rate of speed. (¶23) At approximately 9:56 minutes into the video recording the vehicle containing Plaintiffs can be seen stopped next to a parked car. (¶24) At approximately 9:57 minutes into the video recording the squad car operated by Murphy strikes the front of Plaintiffs' vehicle causing a front-end collision between the two vehicles. (¶25)

Murphy admits that she had never been trained that it was appropriate to intentionally cause a vehicular collision under these circumstances. (¶20) Sergeant Jason Brown has been employed by the Chicago Police Department since 1997, and has been assigned to several different positions within the Chicago Police Department. (¶21) Sergeant Brown testified that the Chicago Police Department does not teach or use any technique that involves police officers using squad cars to intentionally collide with other vehicles. (¶21)

## IV. ARGUMENT

### A. Murphy Used Excessive Force When She Intentionally Rammed Her Squad Car Into Plaintiffs' Vehicle

A court determines whether an officer has used excessive force based on a standard of "objective reasonableness," that is from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396–97 (1989). A police officer's use of force is unconstitutional if, judging from the totality of circumstances, the officer used greater force than was reasonably necessary. *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir.2009); *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir.1987). To determine whether excessive force was used the court should consider whether Plaintiffs posed an immediate threat to the safety of the officers or others, and whether they were actively resisting. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003).

#### 1. Murphy Used Potentially Deadly Force Against Plaintiffs

Police officers' use of a vehicle to strike another vehicle can constitute the use of deadly force, and therefore it is not justified by all forms of alleged criminal behavior. That is, "not every fleeing suspect poses a grave danger." *Donvan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (acknowledging that police officer intentionally striking a motorcycle with police car could be excessive force but granting qualified immunity). For a particular application of force to be classified as 'deadly,' it must at least carry with it a substantial *risk* of causing death *or serious bodily harm.*" *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 593 (7th Cir.1997) (emphasis added). It is undisputed that Murphy struck Plaintiffs' vehicle at a high rate of speed causing a significant impact. Regardless of Murphy's estimate of her speed the video demonstrates Murphy's rate of travel, no attempt to slow down, and the force of the collision. Had the Plaintiffs not been properly restrained this collision could obviously have had tragic

consequences for the Plaintiffs – especially the "infant." Thus, it cannot be disputed that Murphy chose to use an amount of force that posed a substantial risk of imposing death or serious bodily harm against all the Plaintiffs

### 2. There Is No Legal Justification For Murphy's Use of Deadly Force

It is settled law that, under the Fourth Amendment, "[w]here a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

The parties dispute much of what occurred prior to Murphy returning to her squad car and using it to intentionally collide with Plaintiffs. However, the video of the incident makes it clear that Plaintiffs, including children aged approximately 2 and 10, posed no danger to Murphy or other officers at the time of the collision. The video recording is incontrovertible evidence that Plaintiffs were not a threat to anyone, but Murphy chose to ram a car into them. There were no other people near Plaintiffs that were theoretically endangered by them at the time of the collision. The video is clear that before Murphy used her vehicle to strike Plaintiffs they were not in the midst of a physical confrontation with other officers that could potentially justify the use of force. Moreover, the video establishes that Plaintiffs' vehicle had stopped (or nearly so) with the driver's side door open before the collision occurred. These facts, as a matter of law cannot justify Murphy's use of deadly force against Plaintiffs.

Other courts have recognized that police officers using their vehicle in this manner is excessive force if done intentionally. In *Walker v. Davis*, 649 F.3d 502, 503–04 (6th Cir. 2011), the suspect was riding a motorcycle through an empty field at night. The Court recognized that "It is only common sense—and obviously so—that intentionally ramming a motorcycle with a

6

police cruiser involves the application of potentially deadly force." *Id.* at 504. The Court noted that the only jury question was whether the police officer intentionally caused the collision. Likewise, the Court in *Woodward v. D'Onofrio*, 2015 WL 6507395, at *3 (E.D. Mich. 2015), concluded that a police officer intentionally using a patrol car to strike a fleeing suspect on a bicycle would constitute excessive force.

Unlike the police officers in *Walker*, *Woodward*, and other cases where police officers used vehicle to collide with suspects there is no factual dispute regarding whether Murphy intended to cause the vehicular collision. It is an undisputed fact that Murphy intended to cause a front-end collision with a vehicle containing two small children. (¶¶11-12,14)

### 3. There Is No Factual Basis To Conclude Murphy's Use of Force Was Reasonable

Murphy's decision to ram her squad car into Plaintiffs' vehicle is not justified by the circumstances, her training, or Chicago Police Department procedures. Again, at the moment Murphy decided to strike Plaintiffs' vehicle it was stationary, the driver's side door was open, and no police personnel or civilians were in any way imperiled by Plaintiffs. Murphy admits that she had never received any training that instructed her it was acceptable to cause an intentional vehicular collision. (¶ 20) Furthermore, Murphy's co-defendant Sergeant Jason Brown, who has served on the Chicago Police Department for over 20 years, testified that the Chicago Police Department does not teach or use police vehicles to intentionally collide with other vehicles. (¶21) Moreover, Murphy's own testimony belies any notion that her actions were reasonable. She testified that she intended to strike Plaintiffs' vehicle in its front end to stop it from fleeing, but not to disable the vehicle. (¶ 14) Yet, she admitted that she could have accomplished this by simply stopping her vehicle in front of Plaintiffs' car. (¶15)

7

There was nothing rational or reasonable about Murphy's conduct. The video of the incident reveals that she was acting out in a fit of irrational anger. After causing the unjustified collision she sprayed Catherine Brown with OC spray on two separate occasions. (¶¶ 26-27 ) Then she jumped on top of a parked car Plaintiffs' car and pointed her handgun at the head of Catherine Brown who was just a few feet away.(¶ 28) The video demonstrates that Murphy was clearly not engaging in reasonable police activity. Furthermore, this was not an isolated incident of inappropriate behavior by Murphy. For example, in another incident she accepted a 30-day suspension from the Chicago Police Department for falsely accusing three innocent young men of committing an armed robbery. (¶30) In short, there is no factual basis for concluding that Murphy's act of intentionally ramming Plaintiffs' vehicle was the act of a reasonable police officer. Therefore, because there is no legal or factual justification for Murphy's intentional use of potentially deadly force against Plaintiffs they are entitled to summary judgment on Counts I and II of the Amended Complaint as to Defendant Michelle Murphy.

## V. Conclusion

In view of the foregoing, Plaintiffs respectfully submit that this honorable Court should grant Plaintiffs' Motion for Partial Summary Judgment on Counts I and II as to Defendant Murphy, or other such relief that the Court may deem appropriate.

Respectfully submitted,

By:/s/Garrett Browne
    Attorney for Plaintiffs

ED FOX & ASSOCIATES, LTD.
300 West Adams, Suite 330
Chicago, IL. 60606
(312) 345-8877
gbrowne@efoxlaw.com