UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE BROWN, | |
| Plaintiff, | Case No. 15-cv-4127 |
| v. | Judge John Robert Blakey |
| MICHELLE MORSI et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Catherine Brown sued the City of Chicago and multiple Chicago police officers for alleged constitutional violations arising from a 2013 traffic stop. [36]. Plaintiff asserted claims for excessive force (Counts I and II), failure to intervene (Count III), and unlawful seizure (Count IV) under 42 U.S.C. § 1983. Plaintiff raised state-law claims for malicious prosecution (Count V) and willful and wanton conduct (Count VI). Finally, Plaintiff brought claims against the City under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), and the Illinois Tort Immunity Act, 745 ILCS 10/9-402.

This opinion addresses Defendants Michelle Morsi[1] and Jose Lopez's (Defendants) joint motion for summary judgment on Count IV [117] and Plaintiff's motion for summary judgment on Counts I and II [125]. For the reasons explained below, this Court grants Defendants' motion and denies Plaintiff's motion. This Court also grants Morsi summary judgment on Plaintiff's excessive force claims

---

[1] Morsi's last name has since changed to Murphy and the parties use both names in their briefing. No request has yet been made, however, to correct the name on the docket, and thus, for consistency with prior proceedings, this Court uses the name Morsi here.

1

relating to Morsi's intentional collision with Plaintiff's vehicle.

I.  **Background**

The facts in this section come from Defendants' statement of undisputed facts [119], Plaintiff's statement of undisputed facts [125-2], Defendants' statement of additional facts [134], and Plaintiff's statement of additional facts [139]. This Court further assesses the parties' accounts in light of the video evidence submitted with the parties' motions. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Hurt v. Wise*, 880 F.3d 831, 840 (7th Cir. 2018). That evidence consists of dashboard camera (dash cam) footage from Defendants' squad car, *see* [119-5]; [125-8], which captures most of the events giving rise to this case.

On May 13, 2013, Plaintiff drove her car down the alley behind her home in Chicago, Illinois. [125-2] ¶ 6; [139] ¶ 1. Her two children, aged about eight and one, were in the car. *See* [125-2] ¶¶ 5, 6; [134-6] at 7. In the part of the alley located approximately behind 8320 South Kerfoot Street, Plaintiff's car came across Defendants' squad car heading in the opposite direction. [125-2] ¶¶ 6–7.

When they encountered Plaintiff, Defendants were on duty with Lopez driving their marked squad car. [119] ¶¶ 4–5; [119-4] at 7. As the parties' vehicles neared each other, each slowed and stopped. [119] ¶ 7. The cars did not have space to pass each other in the alley, so they came to a halt with their front bumpers facing each other. *Id.* ¶ 10; [125-8] at 3:16. As Defendants' car slowed, the high beam headlights on Plaintiff's car flashed on for about 17 seconds. *See* [125-8] at 3:13–3:29; [119] ¶ 9. The parties vigorously dispute whether Plaintiff also honked her horn repeatedly. *See, e.g.*, [144] ¶ 3.

After Plaintiff switched off her high beams, Defendants exited the squad car and approached her. *See* [125-8] at 3:30–3:58; [119] ¶ 11. Morsi testified that at this point she did not believe that Plaintiff committed any traffic violations, [139] ¶ 6, while Lopez testified that he intended to speak to Plaintiff about her "improper usage of a horn and improper usage of highlights or high beams," [119-4] at 9. Lopez stated that he believed Plaintiff's use of high beams violated the Illinois Vehicle Code because she "was not in traffic" and the conditions did not otherwise merit her use of them. *Id*. Morsi testified that she approached Plaintiff intending to get Plaintiff to back her car out of the alley. [139] ¶ 7.

The angle of the dash cam video does not fully capture the ensuing interaction—the frame cuts off at the front passenger seat, which is empty, and omits the driver's seat, where Plaintiff sat. *See* [125-8] at 4:00. Nevertheless, the video shows Lopez approaching the passenger side; the parties agree that Morsi approached the driver's side and asked Plaintiff for her license and proof of insurance. *Id.*; [119] ¶ 13. Plaintiff testified that Morsi supposedly also told her, "Bitch move that fucking car back," which Morsi denies. *See* [144] ¶ 11. The parties agree that Plaintiff proceeded to call 911, but Defendants deny that she did so in response to any profanity and the parties also dispute their interactions regarding that call. *See id*. ¶¶ 12–14.

At some point Plaintiff moved so that her hands went out of Defendants' view; Plaintiff claims that she reached for her license in response to Defendants' request, *id*. ¶ 15, but her cited deposition testimony contains conflicting evidence

3

about the timing of her movements, *see* [140-1] at 24–27. The parties agree that Defendants drew their weapons in response, but holstered them again once Plaintiff complied with their instruction to show her hands. [119] ¶¶ 14–15. Morsi then tried to open Plaintiff's door, though the parties dispute exactly what she did. *See id*. ¶ 16; [139] ¶ 16. Somehow and at some point, Morsi opened Plaintiff's door. [119] ¶ 17. The dash cam video does not show these interactions, or much of what happened next.

The dash cam captures part of an altercation around the driver's seat of Plaintiff's car, after which Plaintiff backs her car down the alley at a high rate of speed. [125-8] at 8:49–9:04. According to Defendants, Plaintiff suddenly reversed down the alley, dragging Morsi alongside the car. *See* [147] ¶ 2. Plaintiff says she never dragged Morsi and says that Morsi simply fell. *Id*. The parties agree that Plaintiff backed down the alley and onto South Kerfoot. *See* [133] ¶ 9. The dash cam video then shows Morsi getting back into the squad car, while—according to Defendants—Lopez pursued Plaintiff's car on foot. *See id*. at 9:19; [134] ¶ 2–3. In the video, Morsi drives the squad car out of the alley, going over a speed bump before turning right onto South Kerfoot. [125-8] at 9:21–9:33. On South Kerfoot, the dash cam shows Plaintiff's car driving in reverse down the middle of the street with the driver's side door open, facing the squad car. *Id*. at 9:33–9:38. Morsi then drives the squad car into the front of Plaintiff's car. *See id*. at 9:38–9:41; [133] ¶ 11.

Some of the circumstances of that collision remain disputed and cannot be definitively resolved by the dash cam video. Plaintiff claims that her car came to "a

4

stop next to, or made slight contact with, a car parked on Kerfoot" and that Morsi drove into her stopped car, pushing it into the parked vehicle. [125-2] ¶¶ 10, 19. Morsi says that she saw Plaintiff crash into the parked car on Kerfoot before she bumped Plaintiff's car. [134] ¶¶ 5–6. On the video, Plaintiff's car appears to still be in motion as Morsi's squad car makes contact and Plaintiff's car then bumps into the parked car. *See* [125-8] at 9:34–9:43. The video does confirm that Plaintiff's car door was still open as she fled down the street and when the squad car made contact with Plaintiff's car. *Id.*

Morsi knew that Plaintiff's children were in the car at the time of the slow speed collision. [133] ¶ 13. Morsi stated that she decided to "make contact" with Plaintiff's car to prevent her from using it to "flee the scene or strike anybody else," or otherwise continuing to operate her vehicle. [147-1] at 8–9. Morsi estimated that she was traveling under 30 miles per hour when she hit Plaintiff's car. [125-2] ¶ 18.[2] According to her co-defendant's discovery responses, Officer Jason Brown was "not aware" of any "training" by the Chicago Police Department to employ their cars to intentionally hit other vehicles as a disabling technique. *See* [133] ¶ 21.

After the officers stopped Plaintiff's vehicle, Plaintiff still refused to submit to arrest and instead, over the next couple of minutes, she exited and reentered her car on multiple occasions and moved about the interior of her vehicle. [125-8] at 9:55–11:40. Based upon Plaintiff's actions, the officers ultimately needed to deploy mace and Morsi had to draw her weapon again, before the Plaintiff showed her

---

[2] After the vehicles made contact, Morsi, Plaintiff, and Plaintiff's older child were able to exit the cars without difficulty and did not display any visible injuries. *See* [147] ¶¶ 8, 10, 13. Neither car's airbags deployed. *Id.* ¶¶ 11–12.

5

hands. *Id*. at 11:00–11:40. Finally, Morsi, Lopez, and other officers (who arrived on the scene shortly after the stop) arrested Plaintiff, following some extremely rough handling. *See id*. at 9:54–12:00; [119-6] at 2–4. Plaintiff's arrest record shows that Defendants charged her with various offenses, including violating section 9-40-090 of the Chicago Municipal Code, governing the use of high beam headlights.[3] *See* [119] ¶ 19; [119-6] at 2.

As a result of these events, Plaintiff faced a criminal trial in the Circuit Court of Cook County. *See* [134] ¶ 15; [134-6]. After a bench trial, the state judge found Plaintiff guilty of reckless conduct, meaning that she performed "an act or acts that cause bodily harm to or endanger the safety of another person" (in that case, Morsi). [134-6] at 54–55.

Plaintiff filed this suit in May 2015. [1]. She amended her complaint in May 2016. [36]. This Court then bifurcated and stayed Plaintiff's *Monell* claims, pending resolution of the allegations against the individual officers. [96]. Before the deadline for dispositive motions, Plaintiff voluntarily dismissed a number of officers from this case. [115, 116]. Morsi and Lopez then filed their motion for partial summary judgment [117], as did Plaintiff [125] and Defendant Michelle Moore-Grose [121]. Plaintiff has since voluntarily dismissed her claims against

---

[3] Plaintiff objects to this arrest record as hearsay. [137] ¶ 19. Evidence offered at summary judgment "must be admissible at trial, though the form produced at summary judgment need not be admissible." *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). At this point in the proceedings, this Court need not resolve Plaintiff's hearsay objection to the police report, because Morsi and Lopez remain available to testify at trial about the charges filed against Plaintiff upon her arrest (facts ostensibly admissible anyway via the public records exception under Federal Rule of Evidence 803(8)). Moreover, Defendants apparently offer the arrest report merely to corroborate their contention that they had—or believed they had—probable cause when they arrested Plaintiff, which would also constitute a non-hearsay purpose for admissibility. *See id.*; *Wood v. Chicago*, 234 F.3d 979, 986–87 (7th Cir. 2000).

6

Moore-Grose. [136]. This opinion addresses Morsi and Lopez's motion for summary judgment on Count IV [117] and Plaintiff's motion for summary judgment on Counts I and II [125].

**II.     Legal Standard**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact, *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), by citing "particular materials in the record," *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). The non-moving party must do more than create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The moving party is entitled to summary judgment

where the non-moving party fails to establish an "essential element" of the case for which that party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

III. **Analysis**

Defendants move for summary judgment on Plaintiff's unlawful seizure claim (Count IV) on the grounds that they had probable cause to believe Plaintiff committed a traffic violation, rendering her seizure lawful. [118] at 4–5. Plaintiff seeks partial summary judgment on Counts I and II. [125]. These counts allege that Morsi, Lopez, and Brown used excessive force against her (Count I) and her children (Count II). [36] at 9, 10. Plaintiff's present motion, however, relates only to Morsi's intentional collision with Plaintiff's car. [125-1] at 1–2. This Court addresses Defendants' motion before turning to Plaintiff's.

A. **Count IV: Unlawful Seizure**

Count IV of Plaintiff's amended complaint challenges her initial stop by Defendants as an unlawful seizure. [36] at 11. Defendants do not contest that, during the initial interaction in the alley, they seized Plaintiff within the meaning of the Fourth Amendment. *See* [117] at 4–5. Defendants argue, however, that they had probable cause to believe Plaintiff committed a traffic offense, which creates an absolute bar to Plaintiff's unlawful seizure claim. *Id.* at 5. In the alternative, Defendants raise a qualified immunity defense. *Id.* at 10.

1. **Probable Cause**

Defendants' initial "traffic stop and accompanying detention" of Plaintiff in the alley "constitute a seizure under the Fourth Amendment." *Phelan v. Village of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008). Accordingly, the stop must be reasonable

8

to be constitutional. *Id*. A traffic stop is reasonable if an officer has "probable cause to believe that a traffic violation has occurred." *Id*. (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)); *see also Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013). Probable cause exists when the circumstances known to the officer at the time of the stop "warrant a prudent person" believing "that the suspect has committed, is committing, or is about to commit an offense." *Jones*, 737 F.3d at 1114 (internal quotation marks omitted). Courts assess probable cause based upon the totality of the circumstances, viewed objectively from the perspective of "a reasonable person in the position of the officer." *Id*. (internal quotation marks omitted). Probable cause thus encompasses "a zone within which reasonable mistakes will be excused." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

Probable cause for an arrest on any offense precludes an unlawful seizure claim, regardless of whether probable cause existed for the arresting or charged offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004); *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (noting that "so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed"). Moreover, when officers work "in concert on an investigation, probable cause for an arrest may be established by information possessed by any of those officers." *Carter v. Chicago*, No. 02-c-2684, 2004 WL 1093718, at *3 (N.D. Ill. May 3, 2004); *see also United States v. Ledford*, 218 F.3d 684, 689 (7th Cir. 2000) (holding that if the search or seizure constitutes a "joint endeavor," the trial court may properly consider what other officers knew and

9

impute that collective knowledge to the acting officer).

Here, Morsi and Lopez had probable cause to stop and—ultimately—to arrest Plaintiff for violating state and local traffic codes. The Illinois Vehicle Code provides that when any driver "is within 500 feet of another vehicle approaching from the opposite direction," the driver must dim their high-beam headlights. 625 ILCS 5/12-210(a). The Chicago Municipal Code, in turn, requires that, upon "approaching another vehicle proceeding in an opposite direction and when within not less than 350 feet of such vehicle," drivers must dim their headlights. Chi. Mun. Code § 9-40-090. The dash cam video shows Plaintiff's high-beam headlights flash on within several feet of Defendants' squad car. *See* [125-8] at 3:13–3:29. That traffic violation establishes probable cause, *Jones*, 737 F.3d at 1114, and thus bars Plaintiff's unlawful seizure claim, *Rebolar*, 897 F. Supp. 2d at 733.

True, the dash cam footage supports Plaintiff's contention that she stopped her car before flashing her high beams. But the Illinois Vehicle Code contains no requirement that the driver's car be moving. *See* 625 ILCS 5/12-210(a). It may be read to require that the *approaching* vehicle is still moving, *see id.*, and the video shows that, for at least part of the time Plaintiff engaged her high beams, Defendants' squad car was still rolling forward.[4] Thus, contrary to Plaintiff's contention, Defendants did not misinterpret or misapply that statute. *See* [138] at 12–13. The Chicago Municipal Code indicates that it applies to cars in motion, *see* Chi. Mun. Code § 9-40-090 ("On approaching another vehicle. . ."), but, as explained

---

[4] This fact also distinguishes the precedent cited by Plaintiff. In *People v. Hobson*, the defendant officers had parked off the side of the road and thus were not "approaching" the plaintiff's car as he drove past them. *See* 452 N.E. 2d 771, 778–79 (Ill. App. Ct. 1983); [138] at 8.

10

above, probable cause as to *any* offense supports a traffic stop, *see Holmes*, 511 F.3d at 682. Moreover, mistaking that minor point of phrasing falls within the "zone" of reasonable mistakes that do not undermine probable cause. *Kelley*, 149 F.3d at 646. Finally, Lopez's incomplete understanding of the Municipal Code and Morsi's statement that she did not think Plaintiff committed a traffic violation are irrelevant as to whether, viewing the situation objectively, probable cause existed at the time of the stop. *See Jones*, 737 F.3d at 1114.

In sum, based upon the clear language of the Illinois Vehicle Code and the events depicted in Defendants' dash cam video, Defendants had probable cause to stop and approach Plaintiff's vehicle.

### 2. Qualified Immunity

Even if these circumstances fell short of probable cause (which they do not), Plaintiff fails to overcome Defendants' qualified immunity defense. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity, therefore, applies even if an officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.*

Once Defendants invoke qualified immunity, Plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563

11

U.S. 731, 735 (2011) (internal quotation marks omitted). If this Court answers either inquiry negatively, "the defendant official is entitled to summary judgment." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). The inquiries need not be answered in order. *Pearson*, 555 U.S. at 236. Here, Plaintiff cannot show that Defendants violated a clearly established right as to the initial stop in the alley.

To demonstrate that a right was "clearly established" at the time of the alleged violation, Plaintiffs must identify "existing precedent" placing "the statutory or constitutional question beyond debate," *Green*, 868 F.3d at 633 (internal quotation marks omitted), or present the "rare obvious case" where a body of relevant precedent is unnecessary, *see District of Columbia v. Wesby*, 138 S. Ct. 577, 590–91 (2018). The issue here—whether Plaintiff's conduct fell within the letter of the relevant traffic laws—does not present such an "obvious case," so Plaintiff must identify precedent defining the allegedly violated right in a manner "particularized to the facts of the case." *Green*, 868 F.3d at 633 (internal quotation marks omitted). Such specificity becomes "especially important in the Fourth Amendment context," where the Supreme Court has recognized that an officer might struggle to determine how the "relevant legal doctrine" will apply to the "factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, the precedent Plaintiff cites to support her claim that Defendants violated clearly established law falls far short of meeting this standard. She identifies only general prohibitions against stopping motorists who have *not*

12

committed a traffic offense. *See* [138] at 13. In *Huff v. Reichert*, for example, the defendant officers sought to support their claim of probable caused based upon the plaintiff's admittedly non-criminal conduct, such as acting nervously and possessing a driver's license with an out-of-date address. *See* 744 F.3d 999, 1007 (7th Cir. 2014). Those circumstances do not resemble the facts of this case and fail to show that Defendants violated clearly established law. *See, e.g.*, *Mullenix*, 136 S. Ct. at 308. This Court grants Defendants' motion for summary judgment on Count IV.

### B. Counts I and II: Excessive Force

Plaintiff seeks summary judgment on Counts I and II solely with respect to Morsi's intentional collision with Plaintiff's vehicle. [125-1] at 1–2. In response, Morsi argues that she merits qualified immunity, or that, at a minimum, genuine issues of material fact remain as to the reasonableness of her actions. [132] at 4, 8. Contrary to Plaintiff's unsupported assertion, [146] at 7, nothing prohibits Morsi from raising qualified immunity as a defense in her response brief. Instead, this Court treats Morsi's qualified immunity defense as a request for summary judgment and reviews the relevant facts in the light most favorable to Plaintiff. *See Flores v. Lackage*, 938 F. Supp. 2d 759, 774 (N.D. Ill. 2013).

As noted above, Morsi's claim of qualified immunity places the burden on Plaintiff to show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (internal quotation marks omitted). As to the first inquiry, the Fourth Amendment's reasonableness requirement governs an officer's use of force in conducting an arrest or seizure. *Graham v. Connor*, 490 U.S. 386, 396

13

(1989). An officer's use of force violates the Fourth Amendment only if, under the totality of circumstances at the time of the seizure, "the officer used greater force than was reasonably necessary." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (internal quotation marks omitted). Assessing an officer's use of force requires "careful attention to the facts and circumstances" of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Here, genuine issues of material fact prevent this Court from determining whether Morsi's intentional collision with Plaintiff's vehicle represents an unconstitutional use of force. For example, the parties dispute—and the dash cam video fails to resolve—whether Plaintiff dragged Morsi down the alley with her car, a key fact bearing on the threat Plaintiff may have posed to Defendants or to others. *See id.* The parties also dispute other facts regarding Plaintiff's flight in reverse down the middle of South Kerfoot with her door open. Using the squad car to stop Plaintiff's vehicle (and thus end a continuing and dangerous attempt to evade arrest) might be reasonable based upon such facts (if proven) and in light of controlling precedent. *See Scott*, 550 U.S. at 383–86; *see also Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016) (noting that police may "end a highly dangerous car chase by ramming the fleeing car"). But if Plaintiff's alternate version of events prevails at trial, then the use of such significant force might be found unreasonable, particularly given the nature of her initial traffic offense and

14

the presence of two small children in the car. Thus, at this point in the proceedings, this Court cannot conclude, as a matter of law, that Morsi's actions in stopping Plaintiff's flight constituted an unreasonable use of force.

That conclusion (or lack thereof), however, does not end this Court's analysis. If, accepting Plaintiff's account and drawing inferences in the light most favorable to her, Morsi's conduct did not violate clearly established law, then Morsi warrants qualified immunity. *See Mullenix*, 136 S. Ct. at 308 (declining to resolve whether a constitutional violation occurred and proceeding to examine whether the alleged right was clearly established); *Green*, 868 F.3d at 633 (noting that either prong of the qualified immunity inquiry is dispositive).

To qualify as "clearly established," the "contours" of the allegedly violated right "must be sufficiently clear that every reasonable official would have understood that" their actions violated that right. *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) (internal quotation marks omitted). If Supreme Court or Seventh Circuit precedent does not place the constitutional question "beyond debate," this Court may broaden its survey to determine "whether there was such a clear trend in the caselaw" that it could be said "with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (internal quotation marks omitted). Absent any controlling or persuasive authority, Plaintiff must prove that Morsi's conduct was "so egregious and unreasonable" that no reasonable officer could have thought she acted lawfully. *Id.* (internal quotation marks omitted).

Before determining if the law was clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Courts may not define clearly established law at a "high level of generality." *al-Kidd*, 563 U.S. at 742. Instead, the "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (internal quotation marks omitted). The Supreme Court has expressly stated that, in the context of excessive force, "the general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law outside an obvious case." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted). Unless "existing precedent squarely governs the specific facts at issue," officers accused of excessive force warrant qualified immunity. *Id.* at 1152.

Thus, Plaintiff's right may not be defined as the right to be free from unnecessary force; rather, this Court looks for precedent involving an officer's intentional collision with a suspect's vehicle under sufficiently similar circumstances. Drawing the inferences most favorable to Plaintiff—viewed in the light of the dash cam footage—those circumstances include a brief, moderately-paced pursuit of Plaintiff (as she drove in reverse away from police with her door open) before she began to stop "next to, or made slight contact with," a parked car, at which point Morsi collided—at moderate speed, and without setting off either car's airbags—with Plaintiff's car. *See* [125-2] ¶¶ 10, 19; [147] ¶¶ 8, 10–13; [125-8] at 9:33–9:50; *Scott*, 550 U.S. at 381.

16

No precedent squarely governs these facts.  The Supreme Court approved the use of an intentional collision to end an extremely dangerous high-speed chase in *Scott*, *see* 550 U.S. at 383–86, but that case hardly controls here.  The evidence as to Morsi's modest speed consists of her estimate that she traveled at under 30 miles per hour; the dash cam video, which tends to corroborate that estimate and which also shows Morsi going over a speed bump at what appears to be a safe speed; and the undisputed fact that neither car's airbags deployed and no party suffered any visible injuries from the collision.  *See* [125-8] at 9:21–9:33; [147] ¶¶ 8–13.

Few cases address the reasonableness of such slower-speed collisions.  In *Nunn v. City of Woodbury*, a Minnesota district court found that an officer who ended a pursuit by bumping the Plaintiff's "almost-stopped car" at a speed of around 20 miles per hour acted reasonably.  No. 05-632 ADJ/JSM, 2006 WL 3759748, at *8 (D. Minn. Dec. 21, 2006).  In the alternative, the court also found that the officer merited qualified immunity.  *Id.* at *9.  Circuit courts that have condemned intentional collisions by police vehicles have generally done so where the suspect fled on a motorcycle or bicycle—facts clearly distinct from a two-car collision.  *See, e.g.*, *Walker v. Davis*, 649 F.3d 502, 503–04 (6th Cir. 2011); *but see Abney v. Coe*, 493 F.3d 412, 418 (4th Cir. 2007) (reasonable for officer to intentionally collide with motorcyclist in context of high-speed chase).

The cases Plaintiff identifies shed no useful light on the situation.  In *Brower v. County of Inyo*, the Supreme Court addressed immobile roadblocks set up to stop oncoming drivers, a scenario far removed from the present case.  489 U.S. 593, 599

17

(1989). The two Seventh Circuit cases that Plaintiff cites suggest that in some circumstances ramming an unthreatening car could violate the Fourth Amendment, but neither places Morsi's actions beyond debate. In *Felton*, the court—reviewing a motion to dismiss—said that if the plaintiff "posed no danger but officers rammed his car, a Fourth Amendment claim would not be frivolous." 827 F.3d at 636. This brief hypothetical hardly defines the potential Fourth Amendment right such that "any reasonable official" in Morsi's shoes would know she violated it. *Kisela*, 138 S. Ct. at 1153. Besides, the Seventh Circuit decided *Felton* three years after these events; it sheds little light on the law at the time of Morsi's actions, which forms the relevant inquiry for qualified immunity. *See Green*, 868 F.3d at 633. Finally, *Donovan v. City of Milwaukee* addressed a car-motorcycle collision, and expressly distinguished that case from a two-car collision. 17 F.3d 944, 951 (7th Cir. 1994).

Crediting Plaintiff's account, Morsi may have violated Plaintiff's Fourth Amendment rights. Assuming that Plaintiff's only initial offense was a minor traffic violation, and that her car was coming to a stop after her flight down South Kerfoot, an intentional collision at about 30 miles per hour may have constituted "greater force than was reasonably necessary to make the arrest." *Gonzalez*, 578 F.3d at 539. But at the time of these events—and even today—no clearly established precedent places that particular conduct "beyond debate." *Green*, 868 F.3d at 633.

Nor do Morsi's actions amount to the rare "obvious case" that avoids the need for clear precedent. *Kisela*, 138 S. Ct. at 1153. Given the undisputed facts showing

that Defendants had probable cause to arrest Plaintiff and that Plaintiff fled the scene in a reckless manner, this Court cannot say that "*every* reasonable officer" would have known that colliding with Plaintiff's car at moderate speed to prevent her further escape constituted excessive force. *Green*, 868 F.3d at 633 (emphasis added). This is particularly true in light of precedent authorizing far more dangerous collisions in high-speed contexts—a reasonable officer could have interpolated that a milder collision could be justified in less extreme circumstances.

In sum, Morsi warrants qualified immunity as to the car collision based upon the facts present here. This Court denies Plaintiff's motion for partial summary judgment and grants summary judgment to Morsi solely on Plaintiff's claims for excessive force with respect to the collision of their vehicles.

## IV. Conclusion

For the reasons explained above, this Court grants Morsi and Lopez's motion for summary judgment as to Count IV [117]. This Court denies Plaintiff's motion for summary judgment as to Counts I and II [125] and grants summary judgment to Morsi solely with respect to her intentional collision with Plaintiff's car. Because Plaintiff has voluntarily dismissed her claims against Moore-Grose [136], this Court denies Moore-Grose's motion for summary judgment as moot [121].

Dated: June 26, 2018

Entered:

John Robert Blakey
United States District Judge