UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE BROWN, | |
| Plaintiff, | Case No. 15-cv-4127 |
| v. | Judge John Robert Blakey |
| MICHELLE MORSI et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter arises from a 2013 traffic stop and the ensuing altercation between the parties that ended in Plaintiff Catherine Brown's arrest. On June 26, 2018, this Court denied Plaintiff's motion for summary judgment on Counts I and II of her complaint, which alleged that Defendant Officer Michelle Morsi used excessive force when she intentionally collided her car with Plaintiff's as Plaintiff fled the scene. *See* [154, 155]. Morsi invoked qualified immunity in her response brief, and this Court granted her summary judgment. [155] at 19. On July 9, this Court denied Plaintiff's motion for reconsideration. [161].

Plaintiff now moves to certify two proposed issues for an interlocutory appeal: (1) whether, in 2013, the law was clearly established that a police officer violates the Fourth Amendment by intentionally colliding with a suspect's vehicle; and (2) whether the district court may grant summary judgment based upon a qualified immunity defense raised in a defendant's response brief. [165] at 3, 8. For the reasons explained below, this Court denies Plaintiff's motion.

1

## I. Legal Standard

To grant a motion for an interlocutory appeal, the district court must determine that one of its orders "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Four criteria govern this inquiry: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). The moving party must also file its petition within a reasonable time after entry of the order it seeks to appeal. *Id*. "Unless *all* these criteria are satisfied, the district court may not and should not" certify an order for interlocutory appeal. *Id*. at 676.

## II. Analysis

### A. Clearly Established Law

Plaintiff's first proposed question for appeal fails because it is not "contestable" under § 1292(b); that is, no "substantial ground" exists for differences of opinion as to its resolution. § 1292(b); *Ahrenholz*, 219 F.3d at 675. A contestable issue presents a "difficult central question of law which is not settled by controlling authority" and poses a "substantial likelihood" that the district court's ruling may be reversed on appeal. *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995). No such question exists here.

Plaintiff frames her first proposed question as follows: Crediting Plaintiff's version of events, "was the law clearly established that a police officer violates the Fourth Amendment when they intentionally cause a two-car collision with a stationary vehicle containing an individual accused of committing a misdemeanor offense?" [165] at 3.

First, this Court notes that Plaintiff's phrasing attempts to revisit factual arguments and evidentiary issues addressed in this Court's summary judgment ruling. As this Court noted then—and when addressing Plaintiff's motion to reconsider—taking inferences in Plaintiff's favor does not extend to disregarding video evidence. Indeed, this Court must view "the facts in the light depicted" by video evidence. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Hurt v. Wise*, 880 F.3d 831, 840 (7th Cir. 2018). The dash cam video of the parties' encounter shows that Plaintiff's car was still rolling, albeit slowing down, when Morsi's squad car made contact. *See* [155] at 5, 16; [125-8] at 9:34–9:43. And, as Plaintiff's proposed question fails to note, the collision occurred in the context of Plaintiff's intentional and dangerous flight from the scene. *See* [155] at 4; [125-8] at 9:15–9:50.[1] To the extent Plaintiff seeks to challenge those facts—despite their basis in her own admissions and uncontested video evidence—an interlocutory appeal does not provide the proper forum for such a challenge. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010); *Ahrenholz*, 219 F.3d at 676–77.

---

[1] Indeed, Plaintiff's motion raises serious ethical questions under Rule 11, as it disingenuously describes Plaintiff as a "non-fleeing, non-resistant" offender. [165] at 8. That description flatly contradicts the video evidence, [125-8] at 8:49–11:00, and this Court disregards it, *see Hurt*, 880 F.3d at 840.

3

Thus, the question before this Court at summary judgment—which Plaintiff now seeks to subject to interlocutory appeal—was whether existing precedent "squarely" governed "the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). As this Court previously explained, [155] at 16, the facts here include "a brief, moderately-paced pursuit of Plaintiff (as she drove in reverse away from police with her door open) before she began to stop 'next to, or made slight contact with,' a parked car, at which point Morsi collided—at moderate speed, and without setting off either car's airbags—with Plaintiff's car." [155] at 16. This Court has now twice found that "the violative nature" of Morsi's "*particular* conduct" was not "clearly established" in 2013, and thus Morsi merits qualified immunity. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also* [155] at 17–19; [161]. This Court's conclusion does not change in light of the standard governing interlocutory appeals.

As noted, the contestability prong of the interlocutory appeal inquiry requires "substantial ground" for differences of opinion on the question presented. § 1292(b). This may be shown through conflicting authority on the relevant issue. *See Hoffman v. Carefirst of Ft. Wayne, Inc.,* No. 1:09-CV-251, 2010 WL 3940638, at *2 (N.D. Ind. Oct. 6, 2010) (collecting cases); *Carlson v. Brandt*, No. 97-C-2165, 1997 WL 534500, at *6 (N.D. Ill. Aug. 22, 1997) (noting that "interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decisions regarding the claimed controlling issue of law"). In some circumstances, the novelty or unsettled nature of the issue may also demonstrate contestability. *See City of Joliet v. Mid-City Nat'l Bank,* No. 05-C-

4

6746, 2008 WL 4889038, at *2 (N.D. Ill. Jun. 13, 2008) (granting motion to certify appeal), *aff'd sub nom. City of Joliet, Ill. v. New West, L.P.,* 562 F.3d 830 (7th Cir. 2009); *In re Brand Name Prescription Drugs*, 878 F. Supp. at 1081.

Because Plaintiff's proposed question deals with qualified immunity, however, the issue it presents requires careful framing. The question is *not* whether the facts of this case present a novel or unresolved issue—they do. The question proposed for appeal is whether, in May 2013, Morsi's conduct violated a right that had been clearly established by existing precedent. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Thus, the present inquiry is whether "substantial ground" exists for disagreement as to the state of the law in 2013, so that there is a "substantial likelihood" that this Court's determination of that issue may be reversed. § 1292(b); *In re Brand Name Prescription Drugs*, 878 F. Supp. at 1081.

This Court will not rehash its decision awarding Morsi qualified immunity on her intentional collision with Plaintiff's car, but incorporates by reference the relevant portions of its ruling. *See* [155] at 15–19. For present purposes, suffice to say that this Court remains unaware of any case that placed Morsi's conduct "beyond debate" as of 2013. *Mullenix*, 136 S. Ct. at 308.

*Felton v. City of Chicago*—in which the Seventh Circuit acknowledged that ramming the car of an unthreatening suspect might support a Fourth Amendment claim—dates three years after Morsi's actions. 827 F.3d 632, 636 (7th Cir. 2016). *Donovan v. City of Milwaukee* addressed a car-motorcycle collision, and—contrary to Plaintiff's contention—that court *did* find that the difference between a two-car

5

collision and a car-motorcycle collision helped define the Fourth Amendment right allegedly violated. *See* 17 F.3d 944, 951 (7th Cir. 1994) ("Here, for example, we distinguish between a motorcycle and an automobile in terms of the likelihood that a particular seizure amounts to the use of deadly force.").[2] That distinction directly informed the Seventh Circuit's analysis as to the actual right at issue in the case, *see id.*, which must always "be defined at the appropriate level of specificity," *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Here, defining Plaintiff's right with specificity requires examining cases involving two-car collisions. *Donovan* does not present such a case.[3]

In short, neither Plaintiff nor this Court has identified any case pre-dating 2013 that would have informed Morsi, or any reasonable official, that her actions violated the Constitution. *See Kisela*, 138 S. Ct. at 1153. Thus, the state of the law on intentional two-car collisions in 2013 is not contestable: as of that date, no direct precedent or "clear trend" in case law condemned Morsi's particular conduct. *Kemp*, 877 F.3d at 351. No "substantial ground" for disagreement exists as to that point,

---

[2] This Court also notes that every case Plaintiff cites applying *Donovan* also addresses car-motorcycle collisions, again demonstrating *Donovan*'s precedential value *as to those facts*. *See* [165] at 7.

[3] Plaintiff's reliance on a footnote in *Donovan* to paper over this factual distinction is improper and misplaced. Out of context, the footnote appears to suggest that factual distinctions only implicate "the reasonableness of the seizure and not the state of the clearly established law at the time of the incident." 17 F.3d at 952 n.5. Taken literally, that statement would clearly run afoul of *Mullenix*, *Kisela*, and other Supreme Court precedent directing courts to assess qualified immunity—particularly in the Fourth Amendment context—in light of the specific conduct at issue. *See Kisela*, 138 S. Ct. at 1153; *Mullenix*, 136 S. Ct. at 308. In context, however, it is clear that the *Donovan* court actually intended to explain why an Eleventh Circuit case remained relevant to its analysis of the state of the law, despite certain factual distinctions between that case and *Donovan*. *See* 17 F.3d at 952–53, 952 n.5.

and this Court cannot find that it faces a "substantial likelihood" of reversal on this issue. § 1292(b); *In re Brand Name Prescription Drugs*, 878 F. Supp. at 1081.

### B. Raising Qualified Immunity as a Defense

Plaintiff's second proposed question for appeal fails for similar reasons. Plaintiff frames her second question as follows: "Can a District Court grant summary judgment to a non-movant based upon a legal argument that is raised for the first time in a response brief without first giving notice to the parties of the Court's intention to consider the non-movant's arguments in favor of summary judgment, and a full opportunity to respond to those arguments with facts and legal arguments?" [165] at 8.

Qualified immunity constitutes a defense, but not a defense that must be raised at a particular point in the proceedings. *See Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014); *Rakovich v. Wade*, 850 F.2d 1180, 1205–05 (7th Cir. 1988); *Birdo v. Gomez*, 214 F. Supp. 3d 709, 716–17 (N.D. Ill. 2016) (collecting cases). Of course, arguments presented for the first time in a *reply* brief may be waived, *see e.g.*, *Narducci v. Moore*, 572 F.3d 313, 323–24 (7th Cir. 2009), but here, Plaintiff challenges this Court's grant of qualified immunity as to Counts I and II based upon Morsi's invocation of qualified immunity in her *response* brief, *see* [165] at 8; [155] at 19. That fact distinguishes the present situation and indeed, Plaintiff does not argue that Morsi waived her qualified immunity defense; instead, Plaintiff challenges Morsi's very ability to invoke qualified immunity in response to Plaintiff's motion for summary judgment, contending that doing so deprived

7

Plaintiff of notice and an opportunity to respond fully to that argument. [165] at 9. This argument—and Plaintiff's motion for appeal—fails, both because Plaintiff did have notice and an opportunity to respond, and because no precedent supports the notion that officers cannot raise the defense of qualified immunity in response to a summary judgment motion.

Plaintiff attempts to argue that this Court's grant of summary judgment ran afoul of the Seventh Circuit's precedent governing the sua sponte grant of summary judgment. [165] at 9. In fact, the sole case that Plaintiff cites in support of her contention proves otherwise. In *Hotel 71 Mezz Lender LLC v. National Retirement Fund*, the Seventh Circuit laid out the procedure for addressing an unsuccessful motion for summary judgment. 778 F.3d 593, 603 (7th Cir. 2015). Having found that the moving party did not merit summary judgment, a court considering "the prospect of entering summary judgment against the unsuccessful movant, whether in response to a cross-motion for summary judgment or on its own initiative," the court must "now grant the unsuccessful movant all of the favorable factual inferences that it has just given to the movant's opponent." *Id*. If, in that posture, "no finder of fact could reasonably rule in the unsuccessful movant's favor," the district court may "properly enter summary judgment against that movant." *Id*. That is precisely what happened here.

As this Court explained in its summary judgment ruling, it treated Morsi's qualified immunity defense as a request for summary judgment and construed the record in the light most favorable to Plaintiff. [155] at 13. In doing so, this Court

followed the persuasive authority of other courts in this district considering qualified immunity defenses raised in response to motions for summary judgment. *See id.* (citing *Flores v. Lackage*, 938 F. Supp. 2d 759, 774 (N.D. Ill. 2013)). Drawing all inferences in Plaintiff's favor—and considering Plaintiff's arguments opposing qualified immunity in her reply brief—this Court found that Morsi merited qualified immunity and entered summary judgment accordingly. *Id.* at 13–19.

This Court cannot conceive of any procedural unfairness posed by this unremarkable scenario. Here, all individual defendants invoked qualified immunity in their answer to Plaintiff's amended complaint. [42] at 17. Morsi then raised qualified immunity through a fully developed argument in response to Plaintiff's motion for summary judgment, [132] at 8–10, to which Plaintiff responded in her reply, [146] at 7–10. (Plaintiff then followed up this fully-briefed response with a motion for reconsideration [159], and the instant motion for an interlocutory appeal [165]). Thus, Plaintiff had notice from the earliest stages in the case that Morsi would invoke qualified immunity, and a full opportunity to respond in her reply brief, as well as her subsequent filings. The Tenth Circuit addressed nearly identical circumstances and arguments and found that a defendant officer's assertion of qualified immunity in a response brief provided adequate notice to the plaintiff that she must present her evidence and arguments "to forestall a potential grant of qualified immunity" to the defendant. *A.M. v. Holmes*, 830 F.3d 1123, 1137 (10th Cir. 2016). Indeed, to find otherwise would require any official seeking to invoke qualified immunity to file a separate motion or

9

counter-motion any time the plaintiff moved for summary judgment, resulting in duplicative, unnecessary, and inefficient briefing.

In sum, this Court finds no "substantial ground" for disagreement on this question, and thus cannot find that it faces a "substantial likelihood" of reversal. § 1292(b); *In re Brand Name Prescription Drugs*, 878 F. Supp. at 1081.

### III. Conclusion

For the reasons explained above, this Court denies Plaintiff's motion to certify issues for interlocutory appeal [165]. Plaintiff may, of course, attempt to appeal this order, but this Court declines to stay the proceedings here pending any appeal. *See* 28 U.S.C. § 1292(b).

Dated: July 18, 2018

Entered:

_____
John Robert Blakey
United States District Judge